TRINA A. HIGGINS, United States Attorney (#7349)
TODD C. BOUTON, Assistant United States Attorney (#17800)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
SACHIKO JEPSON, Special Assistant United States Attorney (#17077)
Attorneys for the United States of America
111 South Main Street, Suite 1800 | Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: todd.bouton@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> PLASTIC SURGERY INSTITUTE OF UTAH, INC.; MICHAEL KIRK MOORE JR.; KARI DEE BURGOYNE; KRISTIN JACKSON ANDERSEN; AND SANDRA FLORES, <br><br> Defendants. | Case No. 2:23-cr-00010-HCN <br><br> UNITED STATES' OPPOSITION TO DEFENDANT MICHAEL KIRK MOORE JR.'S MOTION TO RECONSIDER DETENTION <br><br><br><br> Judge Howard C. Nielson, Jr. <br> Magistrate Judge Jared C. Bennett |

*"[I]t [sh]ould take more than a perfunctory acknowledgement of contrition to convince the Court that [a defendant's] change of heart decreased his flight risk" or willingness to comply with conditions of release. – See United States v. Chansley*, 2021 WL 4133655, at *4 (D.D.C. September 10, 2021) (unpublished) (citation omitted).

**1.   INTRODUCTION**

Just last Friday (on May 26, 2023), Defendant Michael Kirk Moore, Jr. ("Dr. Moore") was ordered detained before trial. The United States understands the Court ordered him detained because (1) after a lengthy *Faretta* hearing and live testimony, it found by clear and convincing

1

evidence that Dr. Moore had violated his conditions of release, and (2) based on Dr. Moore's insistence on maintaining the Court lacks jurisdiction over him as a result of his professed "sovereign citizen" status and his stated and demonstrated unwillingness to comply with his conditions, the Court also found that Dr. Moore was unlikely to abide by any condition or combination of conditions of release. *See* 18 U.S.C. §§ 3148(1)(B) and (2)(B).

Just hours after his detention, however, Dr. Moore filed or caused to be filed a Motion for Review of Detention Based upon Change of Circumstances. (ECF 87). The motion claims he should be released again with conditions because he has now been forced to be processed by the United States Marshals and has apparently had a "change of heart"—within about four hours—such that he is now willing to comply with any and all conditions of release set by the Court.

The United States objects to and opposes the motion because (1) Dr. Moore has failed to meet the standard required to reopen the issue of detention, and (2) Dr. Moore has failed to demonstrate he is likely to comply with any and all conditions of release set by the Court. In fact, Dr. Moore continues to maintain his position in his Motion to Dismiss for Lack of Subject Matter Jurisdiction, which he reiterated at last Friday's hearing, that the Court lacks jurisdiction over him and thus has no right to compel him to do anything. Therefore, as demonstrated by his four months of noncompliance, he cannot be trusted to abide by any necessary conditions of release.

2. **FACTUAL BACKGROUND**

    **2.1 Dr. Moore willfully failed to comply with his conditions of release for four months.**

    On January 11, 2023, Dr. Moore was indicted for three felony counts of (1) Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371, (2) Conspiracy to Convert, Sell, Convey, and Dispose of Government Property in violation of 18 U.S.C. §§ 371 and 641, and (3) Conversion, Sale, Conveyance, and Disposal of Government Property, and Aiding and Abetting in violation of

18 U.S.C. § 641 and § 2. (ECF 1). On January 26, 2023, Dr. Moore made his initial appearance in this Court and was arraigned. (ECF 20). He was represented by competent defense counsel. He pleaded not guilty to the charges against him and was released with conditions. (ECF 20, 26). Among other things, those conditions required him to report on a regular basis to his pretrial officer as directed and to be fully processed by the United States Marshals. (ECF 26-1 at ¶ 6(d) and p. 5). He was also required to surrender his passport and to report his employment and provide business records for the Plastic Surgery Institute. (*See id.* at ¶¶ 6(a), 6(l)).

Despite being ordered to be fully processed by the United States Marshals and to surrender his passport, Dr. Moore left the courthouse that day and refused to be processed by the Marshals and to surrender his passport for four months. He also failed to report his employment and to provide adequate business records for his Plastic Surgery Institute to his pretrial services officer.

### 2.2 Although Dr. Moore first appeared in Court and filed multiple motions, he then lodged a motion to dismiss claiming the Court lacks jurisdiction over him.

After his initial appearance in Court, Dr. Moore filed or caused to be filed multiple motions in this Court and even appeared for a status conference. These motions included:

- a motion to modify his conditions of release (filed on February 23, 2023);

- a motion to continue the trial and motion deadlines (filed on March 7, 2023); and

- a motion to withdraw as counsel he instructed his former attorneys to file (filed on April 17, 2023).

(ECF 47, 49, 65). On March 30, 2023, he appeared, with counsel, for a status conference on Zoom. (ECF 57). He did all this without asserting the Court lacked jurisdiction over him.

But then Dr. Moore changed his tactics and his position. On May 18, 2023, he lodged a motion to dismiss for lack of subject matter jurisdiction styled a "Notice of Special Appearance in

3

Propria Persona." (ECF 75). In that "motion," he "affirm[ed]" and "declare[d]," in a written submission to the Court, that "***this Court lacks jurisdiction, and that it has committed fraud upon the court, fraud upon We the People and fraud ab initio***" by attempting to exercise jurisdiction over him. (*Id*. at 4; *see also, e.g., id.* at 5 (making similar assertions that the Court lacks jurisdiction over him)) (emphasis added). In the same "motion," Dr. Moore further moved to *dismiss the criminal complaint against him based on an asserted lack of jurisdiction over him*. (*Id*.at 4). He likened being forced to appear before this Court to being "kidnapped, which [he asserted would be] a crime in and of itself." (*Id.* at 6). He further declared that "[he would] not be appearing in person on May 26, 2023," and moved the Court to vacate the hearing for lack of jurisdiction over him. (*Id.* at 6). His 34-page filing asserts, in essence, that the Court lacks jurisdiction over him because he is a "sovereign citizen" beyond the Court's jurisdiction.

### 2.3 At his May 26 hearing, Dr. Moore repeatedly maintained the Court lacks jurisdiction over him because he is a "sovereign citizen."

Despite his stated refusal to appear at the May 26, 2023 hearing, Dr. Moore did appear in court. (ECF 83). But any apparent compliance on his part ended there. Throughout the hearing, Dr. Moore maintained repeatedly that he was "specially appearing in propria persona," and attempted to deny the Court's jurisdiction over him based on his asserted status as a "sovereign citizen," residing in a "foreign government," outside the jurisdiction of the United States of America. (*See* ECF 89 at 2, ECF 75 at 5, 10-11). He refused to accept the Court's jurisdiction.

After the Court conducted a detailed *Faretta* hearing and ultimately granted Dr. Moore's motion to terminate his attorneys and to represent himself, Dr. Moore agreed to have his "Notice of Special Appearance in Propria Persona" converted to a formal motion to dismiss all charges against him for lack of subject matter jurisdiction. (*See* ECF 86). Although at the outset of the hearing, the Court rejected Dr. Moore's sovereign citizen arguments and warned him that he could

4

be held in contempt for continuing to assert the Court lacked jurisdiction over him, Dr. Moore continued to claim the Court lacked jurisdiction over him—right up until the Court ordered him to be handcuffed by the marshals and led out of court to be detained until trial. (*See* ECF 89 at 2).

**2.4 Although he was given the chance to agree to comply with his conditions, Dr. Moore chose to maintain that the Court lacked jurisdiction over him, leading to his detention.**

Before he was ordered detained, Dr. Moore was given several chances to acknowledge the Court's jurisdiction over him. Notably, when the Court held a hearing on Dr. Moore's alleged violations of his pretrial release, Dr. Moore was asked for his plea as to the allegations. He stated only that he was "appearing in propria persona," asserting the Court lacked jurisdiction. The Court interpreted Dr. Moore's statement as a "not guilty" plea. Thereafter, the United States called Dr. Moore's pretrial services officer to the stand and proved by clear and convincing evidence that Dr. Moore had committed at least two violations of his release conditions. For over four months, Dr. Moore failed to complete processing by the U.S. Marshal's Service as instructed by the U.S. Pretrial Services Office and failed to surrender his passport. (ECF 89 at 2). When the United States recommended that Dr. Moore be detained, Dr. Moore continued to maintain the Court lacked jurisdiction over him. At that point, the Court ordered him detained based on his violations of his conditions and a finding that, based on his conduct while on release and on his rejection of the Court's authority and jurisdiction over him on the record and in his motion, Dr. Moore was unlikely to abide by any condition or combination of conditions of release. (*See* ECF 89 at 2).

**2.5 Roughly four hours after Dr. Moore was forcibly detained, someone filed a motion to reconsider his detention on his behalf, claiming, in essence, that he had a change of heart and would now be compliant going forward.**

Dr. Moore was forcibly detained at around 12:00pm. Just about four hours later, at 4:15pm, someone filed a motion for review of detention on behalf of Dr. Moore. (ECF 87). That motion claims, essentially, that, *within those four hours*, Dr. Moore had a "change of heart" such that he

5

is now "prepared to follow any and all conditions of release set by this Court." (*Id.* at 2). The United States remains skeptical of this sudden professed change of heart.

Notably, the motion filed on behalf of Dr. Moore lacks any renunciation of his claims that the Court still lacks jurisdiction over him as a "sovereign citizen." Nor has Dr. Moore withdrawn his Motion Dismiss for Lack of Subject Matter Jurisdiction which he filed on that basis. In short, in terms of Dr. Moore's likelihood of compliance, nothing has changed since last Friday.

3. ARGUMENT

   **3.1 Dr. Moore has failed to meet the standard to reopen detention.**

Dr. Moore's motion correctly cites the standard for reopening a detention hearing. But his motion does not meet that standard. Pursuant to 18 U.S.C. § 3142(f)(2), a detention hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds two things. First the judicial officer must find that information exists that was not known to the movant at the time of the hearing. 18 U.S.C. § 3142(f)(2). And second, the judicial officer must find that *this new information* has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. *Id.* Here, neither element is met.

   **3.1.1. Dr. Moore has failed to introduce new evidence that was unknown to him at the time of the detention hearing.**

Dr. Moore's motion fails to identify any new information that was not known to him at the time of his hearing. The fact that Dr. Moore was forced to be fully processed by the United States Marshals after he was ordered detained at the end of the hearing is not the kind of new information envisioned by the statute. This fact does not amount to information that, if known at the time of the hearing, might have led to a different result. Rather, Dr. Moore's belated forced compliance is simply the result of the detention hearing necessitated by his noncompliance.

Nor is Dr. Moore's professed "change of heart" the kind of new, previously unknown information that would justify revisiting his detention. During the hearing, Dr. Moore had roughly 90 minutes to acknowledge the Court's jurisdiction. He chose not to. Instead, Dr. Moore refused to comply with the Court's conditions and openly rebelled against the Court. His belated "change of heart" was not a fact he was unaware of during the hearing that the Court was unable to consider in ruling on detention. It did not exist—even allegedly—until after the hearing had concluded.

When asked to reconsider a detention ruling, a handful of nonbinding courts have admittedly considered arguments regarding a professed "change of heart." But they have rejected such arguments, when, as here, they were based on a "perfunctory acknowledgment of contrition." *See United States v. Chansley*, 2021 WL 4133655, at *1, 4 (D.D.C. Sept. 9, 2021) (unpublished) (denying motion for release from custody pending sentencing based on defendant's "perfunctory acknowledgment of contrition" for forcing his way through the barricades and past Capitol Police officers into the Senate Chamber on January 6, 2021); *U.S. v. Sago*, 2009 WL 3698522, at *3-4 (D. Colo. Nov. 4, 2009) (unpublished) (denying motion to reconsider pretrial detention based on defendant's professed "recent change of heart" concerning criminal conduct); *United States v. Jacob*, 2023 WL 2867324, at *1-2, , 6-8 (E.D. La. April 10, 2023) (unpublished) (denying motion to reconsider pretrial detention based on defendant's mother's "change of heart" to agree to be his third party custodian and to allow him to reside with her); *Government of V.I. v. Texido*, 1996 WL 580372, at *6-7 (Terr. V.I. Sept. 24, 1996) (unpublished) (denying motion to reconsider detention based on third party's "change of heart" in agreeing to serve as a third party custodian).

Dr. Moore's perfunctory statement of contrition comes too late. It is not "new evidence." Nor, under the circumstances, is it credible.

/ / /

### 3.1.2 Dr. Moore's asserted new evidence is not material as to whether any conditions of release would assure Dr. Moore's appearance.

To support revisiting his detention, Dr. Moore points to three kinds of purported new evidence: (1) that he has now been forcibly processed by the United States Marshals after he was ordered detained, (2) that he is now willing to surrender (and has surrendered) his passport, and (3) that he is now reportedly willing to comply with any and all conditions of release set by the Court. These "facts" do not, however, constitute the kind of "new evidence" required to justify reconsidering his detention. And even if they did, they still would not show that Dr. Moore would be likely to comply with any condition of release or combination of conditions of release nor would they ensure his appearance as required. *See* 18 U.S.C. § 3148(2)(B); 18 U.S.C. § 3142(f)(2).

Indeed, the fact that Dr. Moore had to be forced to be processed by the United States Marshals does not support his release. Rather, it supports his detention. Dr. Moore had four months to be processed. Instead, represented by competent counsel, who likely advised him against it, he chose to walk out of the courthouse after his initial appearance without being processed. He then refused to be processed by the marshals for four months. He stated in a filing with the Court that he would not appear for his May 26 hearing. His former counsel (or someone else) apparently convinced him to appear for that hearing. But at the hearing, Dr. Moore only confirmed his unwillingness to recognize the Court's jurisdiction over him and to comply with the Court's orders. His forced compliance proves that Dr. Moore will only comply with conditions if physically forced to do so. Therefore, he cannot be trusted to be released on conditions again.

Moreover, the statement in Dr. Moore's motion suggesting he is now willing to follow any conditions of release set by this Court is also immaterial to his detention. For one, it is unclear that Dr. Moore even authored the motion, given that it was filed only four hours after he was detained. Therefore, it is unclear that the motion accurately reflects any genuine commitment on his behalf

to comply with any conditions of release going forward. But even assuming Dr. Moore filed or approved this statement of willingness to comply in the motion, it still would not be material.

Dr. Moore's professed statement of his post-detention willingness to comply with conditions is inconsistent with his past behavior over the course of the last four months. For four months, he refused to be processed by the United States Marshals or to surrender his passport as ordered by the Court. And as recently as last Friday, in open court, he refused to acknowledge the Court's jurisdiction over him. Equally telling, he has not withdrawn his motion to dismiss for lack of subject matter jurisdiction. Thus, even while incarcerated, he continues to insist, contrary to the "perfunctory acknowledgment of contrition" in his motion to reconsider detention, that this Court lacks jurisdiction over him. In fact, he includes a "demand" that the Court immediately drop all criminal charges against him and vacate all pending proceedings and hearings in this matter. (ECF 75 at 26-27). The hollow statement that he is now willing to comply with any and all conditions of release should not materially affect the Court's detention analysis.

### 3.2 Dr. Moore has failed to demonstrate, and cannot demonstrate, he is likely to abide by any and all conditions of release set by the Court.

The Court should not revisit Dr. Moore's detention because he has failed to demonstrate that he is likely to abide by any and all conditions of release set by the Court. On May 26, after approximately 90 minutes of hearings, the Court found by clear and convincing evidence that Dr. Moore had violated conditions of his release and found that he was unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b)(2)(B); (ECF 89 at 2). Dr. Moore's recent "perfunctory acknowledgement of contrition" or professed "change of heart" should not change these findings and does not justify revisiting his detention.

Dr. Moore's professed "change of heart" cannot erase his four months of noncompliance. Nor can his professed contrition support a finding that he is now likely to abide by any conditions

9

of release. Indeed, his professed contrition is inconsistent with his pending motion to dismiss for lack of subject matter jurisdiction and with his recent assertions in open court that this Court lacks jurisdiction over him. Dr. Moore has not renounced this position. Nor has he claimed, much less explained how, he has suddenly come to respect the Court's jurisdiction—in just four hours. As demonstrated by his conduct over the last four months, on the record, and in open court last Friday, he cannot be trusted to abide by any condition or combination of conditions of release.

4.  **CONCLUSION**

Dr. Moore has not met the standard to reopen the issue of detention. His actions over the past four months, and as recently as last Friday, have demonstrated that he violated his conditions of release and he is not likely to abide by any condition or combination of conditions of release. Combined with his history of noncompliance, his insistence that the Court lacks any jurisdiction over him makes him a flight risk and a risk of continued noncompliance. Therefore, the United States requests that the Court not reopen detention and that Dr. Moore remain detained until trial.

DATED this 30th day of May, 2023.

                                          TRINA A. HIGGINS
                                          United States Attorney

                                          */s/Todd C. Bouton*
                                          TODD C. BOUTON
                                          Assistant United States Attorney